OPINION
{¶ 1} Vernon M. Myers pled no contest in the Montgomery County Court of Common Pleas to escape, in violation of R.C. 2921.34(A)(1), after the trial court overruled his challenge to the constitutionality of the escape statute. The escape charge stemmed from Myers's failure to report to his parole officer between September 7, 2005, and November 15, 2005; Myers was on parole for robbery, a second degree *Page 2 
felony. The court found him guilty and sentenced him to a mandatory term of two years in prison. Myers appeals from his conviction, asserting that R.C. 2921.34 is unconstitutional. For the following reasons, Myers's conviction will be affirmed.
 I. {¶ 2} Myers raises two assignments of error on appeal. Myer's first assignment of error is as follows:
 {¶ 3} "PROSECUTION FOR THE OFFENSE OF ESCAPE AFTER VIOLATING POST-RELEASE CONTROL UNDER R.C. 2921.34 IS UNCONSTITUTIONAL, AS IT VIOLATES THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION."
 {¶ 4} In his first assignment of error, Myers claims that R.C. 2921.34
violates the Eighth Amendment to the United States Constitution, which provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." "Historically, the Eighth Amendment has been invoked in extremely rare cases, where it has been necessary to protect individuals from inhumane punishment such as torture or other barbarous acts. Robinson v. California (1962),370 U.S. 660, 676, 82 S.Ct. 1417, 1425, 8 L.Ed.2d 758, 768. Over the years, it has also been used to prohibit punishments that were found to be disproportionate to the crimes committed." State v. Weitbrecht,86 Ohio St.3d 368, 370, 1999-Ohio-113, 715 N.E.2d 167. To constitute a violation of the Eighth Amendment, the penalty must be shocking, under the circumstances, to a reasonable person and "so greatly disproportionate to the offense as to shock the sense of justice of the community." Id. at 371.
 {¶ 5} The United States Supreme Court has set forth a tripartite framework to *Page 3 
review sentences under the Eighth Amendment:
 {¶ 6} "First, we look to the gravity of the offense and the harshness of the penalty. * * * Second, it may be helpful to compare the sentences imposed on other criminals in the same jurisdiction. If more serious crimes are subject to the same penalty, or to less serious penalties, that is some indication that the punishment at issue may be excessive. * * * Third, courts may find it useful to compare the sentences imposed for commission of the same crime in other jurisdictions." Solem v.Helm (1983), 463 U.S. 277, 290-91, 103 S.Ct. 3001, 77 L.Ed.2d 637.
 {¶ 7} The court need not consider the second and third prongs of theSolem test if "a comparison of `the gravity of the offense and the harshness of the penalty' under the first element of Solem does not give rise to an inference of gross disproportionality." State v. Barnes
(2000), 136 Ohio App.3d 430, 435, 736 N.E.2d 958.
 {¶ 8} In reviewing this issue, we note that statutes are afforded a strong presumption of constitutionality, and the challenger must establish that the statute is unconstitutional beyond a reasonable doubt. State v. Weitbrecht, 86 Ohio St.3d at 370; State v. Love, Montgomery App. No. 21568, 2007-Ohio-135, ¶ 5.
 {¶ 9} Myers was convicted of escape, in violation of R.C.2921.34(A)(1). That statute provides: "No person, knowing the person is under detention or being reckless in that regard, shall purposely break or attempt to break the detention, or purposefully fail to return to detention, either following temporary leave granted for a specific purpose or limited period, or at the time required when serving a sentence in intermittent confinement." "Detention" includes "supervision by an employee of the department of rehabilitation and correction of a person on any type of release from a *Page 4 
state correctional institution." R.C. 2921.01(E).
 {¶ 10} The degree of offense under the escape statute is dependent upon the nature of the underlying crime for which the offender was under detention. R.C. 2921.34(C). In the instant case, Myers was charged with escape, a second degree felony, because his underlying offense of robbery was a felony of the second degree. Accordingly, Myers was subject to a possible sentence of two to eight years of imprisonment. Myers received a sentence of two years in prison, the minimum available sentence for the sentencing range.
 {¶ 11} Myers argues that his two-year sentence was grossly disproportionate to the offense, which was based on his failure to report to his parole officer for a ten-week period. The Eighth Appellate District rejected a similar argument in Barnes, in which a parolee raised an Eighth Amendment challenge to his conviction for escape based on his failure to report to his parole officer on four occasions in a two-week period. Barnes received a one-year sentence, the minimum sentence available. On review, the appellate court found that the firstSolem prong was not satisfied, reasoning:
 {¶ 12} "* * * We note with great deference that Ohio's General Assembly has seen fit, through its passage of R.C. 2921.34, to stiffen the punishment available to detainees, which includes parolees, who choose to break their detention or fail to return to detention. We also recognize that there exists a strong presumption of constitutionality with regard to legislative determinations. This legislative action, on its own, clothes the offense with a presumption that the General Assembly considered the gravity of the offense to be of such seriousness to the state that heightened penalties were justified in order to provide a deterrent. The General Assembly clearly wished to *Page 5 
deter those detainees from violating their detention status and running the risk of criminal recidivism or interrupting their orderly rehabilitation and return to the law-abiding population. In addition, this determination by the General Assembly to treat the crime of escape as a grave offense is corroborated by R.C. 2901.01(A)(9), which defines escape as an `offense of violence.' Being an offense of violence, it does not shock the conscience of the community that, in appellant's case, the range of punishment for a conviction of escape is one to five years imprisonment.
 {¶ 13} "As to the harshness of the penalty incurred by appellant for having failed to report to his parole officer on four occasions over a two-week period, we note that the trial court imposed the minimum sentence available. Obviously, the trial court took into consideration the facts of the offense and proportionately tailored the penalty to the degree of the crime." Barnes, 136 Ohio App.3d at 435-36.
 {¶ 14} Although Myers's escape offense had a potential penalty of two to eight years, we find Barnes persuasive, and we likewise conclude that Myers's two-year sentence was not grossly disproportionate to his offense. See, also, State v. Adams (Oct. 4, 2000), Lorain App. No. 99 CA 7478. We note that, effective October 4, 1996, R.C. 2921.01(E) was amended to remove the exclusion of parolees from the definition of detention and, on March 17, 1998, R.C. 2967.15(C)(2) was amended to remove the exception for parolees. See State v. Thompson,102 Ohio St.3d 287, 2004-Ohio-2946, 809 N.E.2d 1134, ¶ 7-8. Accordingly, as expressed in Barnes, the Ohio legislature's actions demonstrate its intent to include parolees who fail to abide by the terms of their parole in the potentially harsh sentencing scheme for escape. Myers's Eighth Amendment challenge lacks merit. *Page 6 
 {¶ 15} The first assignment of error is overruled.
 II. {¶ 16} Myers's second assignment of error is as follows:
 {¶ 17} "R.C. 2921.34 VIOLATES THE EQUAL PROTECTION CLAUSE OF SECTION 2, ARTICLE I OF THE OHIO CONSTITUTION AND THE UNITED STATES CONSTITUTION."
 {¶ 18} In his second assignment of error, Myers claims that the escape statute violates his right to equal protection, because it bases the severity of the offense on the level of the offender's original conviction. He argues that, as a result, "persons committing the same crime, or even a worse version of the crime of escape, but who have committed a different underlying crime will be punished less severely for the exact same conduct."
 {¶ 19} The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that "no State shall * * * deny to any person within its jurisdiction the equal protection of the laws." Section 2, Article I of the Ohio Constitution states:
 {¶ 20} "All political power is inherent in the people. Government is instituted for their equal protection and benefit, and they have the right to alter, reform, or abolish the same, whenever they may deem it necessary; and no special privileges or immunities shall ever be granted, that may not be altered, revoked, or repealed by the General Assembly."
 {¶ 21} Although worded differently, "[t]he limitations placed upon governmental action by the Equal Protection Clauses of the Ohio and United States constitutions are *Page 7 
essentially identical." Beatty v. Akron City Hosp. (1981),67 Ohio St.2d 483, 491, 424 N.E.2d 586, citing Porter v. Oberlin (1965),1 Ohio St.2d 143, 205 N.E.2d 363.
 {¶ 22} "`Under traditional equal protection analysis, class distinctions in legislation are permissible if they bear some rational relationship to a legitimate government objective. Departures from traditional equal protection principles are permitted only when burdens upon suspect classifications or abridgments of fundamental rights are involved.' State ex rel. Vana v. Maple Hts. City Council (1990),54 Ohio St.3d 91, 92, 561 N.E.2d 909, 911, citing Clements v. Fashing (1982),457 U.S. 957, 963, 102 S.Ct. 2836, 2843-2844. Under rational basis scrutiny, legislative distinctions are invalid only if they bear no relation to the state's goals, and no ground can be conceived to justify them. Fabrey v. McDonald Village Police Department (1994), 70 Ohio St .3d 351, 353, 639 N.E.2d 31, 33." State v. Harding, Montgomery App. No. 20801, 2006-Ohio-481, ¶ 71.
 {¶ 23} In the present case, we find no constitutional violation due to the legislature's decision to base the degree of the escape charge on the degree of the offense for which the escapee is under detention. As stated in Adams, supra, "[c]learly, the escape statute serves to promote the general welfare and safety of the public by deterring individuals from attempting to leave lawful detention, thereby protecting law enforcement officials and persons who may encounter the individual while he or she is fleeing detention." The graduated penalty based on the underlying offense is ostensibly based on the reasonable assumption that the public faces a greater risk from those individuals who commit more serious offenses. The General Assembly thus had a rational basis for imposing a greater degree of offense and a *Page 8 
harsher potential sentence on escapees who have broken detention or have attempted to break detention for a more serious offense. We therefore conclude that Myers's equal protection argument lacks merit.
 {¶ 24} Myers's second assignment of error is overruled.
 {¶ 25} The judgment of the trial court will be affirmed.
 WOLFF, P.J. and FAIN, J., concur. *Page 1